I2DALEY, Judge.
Appellant, Heidi Carr Denicola, appeals the trial court’s judgment setting child support. On appeal, she argues that the trial court was manifestly erroneous in deviating from the child support guidelines, and that the court further erred in not stating reasons for the deviation. We amend the judgment of the trial court, since the child support *1084 award deviated from the child support guidelines without stating reasons for the deviation as per LSA-R.S. 9:315.1.
Mrs. Denicola filed a Petition for Divorce on April 11, 1997. The petition alleged that the parties had been married on October 24, 1982, and two children were born of the marriage, twin girls born on October 21, 1990. The petition further noted that Mr. Denicola’s mentally retarded daughter, born to his first marriage and step-daughter to Mrs. Denicola, would be allowed to reside with Mrs. Denicola at the former matrimonial domicile as long as she or her tutor desired. The parties entered |3into a consent judgment on May 9, 1997, agreeing to joint custody of the twins with Mrs. Denicola as the domiciliary parent.
After discovery, the parties entered into a consent judgment regarding use of the matrimonial domicile, custody of the children, and reset the hearing on child support to July 3, 1997. This consent judgment was signed by the district court judge. The matter of child support was submitted to a hearing officer, who recommended that Mr. Denicola pay child support to Mrs. Denicola for the twins in the amount $256.00 per month plus 26% of any uncovered extraordinary medical expenses. This recommendation is dated November 6, 1997, is signed by a hearing officer, and states the effective date as October 1,1997.
At the hearing on November 6, 1997, the commissioner deviated from the hearing officer’s recommendations and the guidelines and set the monthly support award at $156.00. It is from this judgment that Mrs. Denicola appeals.
On appeal, Mrs. Denicola argues that the trial court erred in deviating from the child support guidelines. She also argues that the trial court failed to state reasons for the deviation.
At the outset, we note that the support ruling was made by a domestic commissioner, based upon a recommendation by a hearing officer. The parties submitted the judgment to the district court judge, who signed it. Domestic commissioners are a new feature of the judicial landscape, authorized by LSA-R.S. 13:717. Section D(2) of this statute outlines the powers of the commissioner hearing domestic matters as follows:
(2) The powers of the commissioner hearing domestic matters shall include, but shall not be limited to, the power to:
(a) Render and sign judgments and orders confirming judgments by default in accordance with the general provisions of Llaw, including the requirement of introducing proof sufficient to establish a prima facie case.
(b) Grant uncontested divorces.
(c) Implement interim child support and custody orders.
(d) Approve consent judgments.
(e) Sign ex parte and emergency orders.
(f) Fine and punish for contempt of court in the same manner as a district court judge, as set forth in Articles 221 through 227 of the Code of Civil Procedure.
E. Except as provided in this Subsection, the commissioners shall not have the power to adjudicate cases. Each time an action is filed with the clerk of court for the Twenty-fourth Judicial District Court, the clerk shall notify the parties to that action of their right to consent to jurisdiction by the commissioners. In each case in which the parties consent to the matter being heard and adjudicated by a commissioner, the commissioners may conduct any and all proceedings on any matter pending before the court and may order the entry of judgment in the case. Each judgment entered by a commissioner shall be signed by a judge of the Twenty-fourth Judicial District Court. Any party who is aggrieved by a judgment entered by a commissioner may appeal that judgment in the same manner as any other judgment entered by a district court. Any party who disagrees with a judgment or ruling of a commissioner may file a written objection thereto. The objection shall be filed within three days of the judgment or ruling and shall be filed in accordance with the rules of the Twenty-fourth Judicial District Court. The objection shall be heard by a judge of the Twenty- *1085 fourth Judicial District Court. The judge may decide the objection based on the record of the proceedings before the commissioner or may receive further evidence and rule based on that evidence, together with the prior evidence, or may recommit the matter to the commissioner with instructions.
The record reflects that on November 6, 1997, a hearing officer made a recommendation that Mr. Denicola’s child support obligation be set at $256.00 per month plus 26% of any uncovered extraordinary medicals. On the same day, the |5matter came for hearing before the domestic commissioner, who recognized the hearing officer’s recommendation, but deviated from that figure by subtracting $100.00, and awarding Mrs. Deni-cola $156.00 per month in child support. The commissioner asked that the parties prepare a judgment, which was apparently done, signed by counsel for both parties, and submitted to the district court for signature. The record contains this judgment signed by the district court judge, dated November 9, 1997. The Notice of Appeal was filed December 29, 1997.
On its own motion, this court asked the parties to show cause by brief only why the appeal should not be dismissed as being untimely, because the appeal notice was filed after the time delays provided in LSA-C.C.P. arts. 3942 and 3943. In response, appellant attached to his brief an identical copy of the judgment in the record signed by the district court judge, but signed by the commissioner on December 18, 1997. This judgment does not appear in the appellate record. Appellant argued that this latter judgment controls appeal delays.
We disagree. LSA-R.S. 13:717 E requires that a commissioner may order entry of a judgment, and every judgment in a contested matter entered by a commissioner shall be signed by a district court judge. We read this provision as mandatory. Therefore, the effective judgment is the one signed by the district court judge on November 9, 1997.[1] That judgment began the running of appeal delays, and, therefore, the appeal notice filed December 29,1997 appears untimely. Moreover, the December 18, 1997 judgment signed by the commissioner does not appear in the appellate record. Since, however, the record contains no notice of mailing or service of judgment, the appeal cannot be dismissed as untimely.
| fiOn the merits, the commissioner deviates from the figure set by the hearing officer as per the statutory child support guidelines, but does not, as per LSA-R.S. 9:315.1,
“give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines. The reasons shall be made part of the record of the proceedings.”
The commissioner merely states at the hearing that he is “giving a break” to Mr. Denicola. We find this statement to fall short of the requirements of LSA-R.S. 9:315.1 and, therefore, the deviation from the guidelines is improper.
We also note that although the judgment recites Mr. Denicola’s monthly income as $927.00, the support award appears to have been figured upon his monthly income of $746.00 as per his income and expense sheet, P-5. As per LSA-R.S. 9:315.8, we checked the support award by adding the parties’ reported incomes of $746.00 and $2100.00, to arrive at a combined income of $2846.00 and a support obligation figure of $677.00 per month (from the table in RS 9:315.14), to which we added $50.00 child care, $166.00 health insurance premiums, and $100.00 medical expenses (all from Mrs. Denicola’s income and expense sheet, P-1), to reach a total support of $993.00 per month. We multiplied this figure by 26%, which is Mr. Deni-cola’s share of the obligation, and arrived at $258.00 per month, which is $2.00 more than *1086 the hearing officer’s recommended support award.
At the hearing, Mr. Denicola testified that he was disabled as a result of a serious car accident that he and Mrs. Denicola suffered together. They have a lawsuit pending with regal’d to the accident. Mr. Denicola testified that his only income was $927.00 from permanent Social Security Disability payments, and that he was obligated to pay some of the expenses of his twenty-one year old daughter, Amy 17Penicola, who was mentally retarded and suffered from severe epilepsy. She resided in a treatment facility in Slidell, but would eventually return home. He testified that not all of her treatment expenses were covered by Medicare and Medicaid, and that he was responsible for some of them. Mr. Denicola further testified that he did not derive income from construction or his grass cutting business.
On appeal, Mrs. Denicola argues that the trial court erred in not considering Mr. Deni-cola’s income from other surreptitious sources. In this section, they argue that he voluntarily left his job at the Grand Casino in Biloxi, and that he made money at his grass cutting business.
Mr. Denicola testified that he left his job as pit boss at the Grand Casino in Biloxi because the daily commute from New Orleans was costing him too much money. He also testified, in his deposition in the personal injury suit, that he only made enough money to pay some bills at the grass cutting. He stated at the support hearing that he did not work at this business and all he owned was a rusty lawn mower.
Mrs. Denicola argues also that the court should include income from a shed that Mr. Denicola built for a neighbor that cost $2800.00. Mr. Denicola testified that he cleared $500.00 from that one-time project. There is no evidence in the record that Mr. Denicola receives regular income from constructing sheds. However, we note that Mrs. Denicola moved to have the record in this case sealed regarding Mr. Denicola’s ability to work so as to render this information unavailable in a personal injury suit in which both parties have an interest. Finally, Mrs. Denicola argues that the court failed to consider a miniature Franklin Mint ear collection that she had appraised at $2000.00 — ■ $8,000.00. However, there was no discussion as to a market for these cars to convert them to ready cash.
laMr. Denicola’s counsel explained to the court that his client’s only source of income at the moment was from Social Security Disability, and he was basically supporting Mr. Denicola by advancing him funds. Both parties expect to receive an award from the personal injury law suit, but at this point no settlement or judgment has occurred.
We amend the support judgment to award Mrs. Denicola $256.00 per month in child support, as reflected by the hearing officer’s recommendation calculated from the statutory child support guidelines of LSA-R.S. 9:315 et seq. Accordingly, we amend the decree of the trial court’s November 9, 1997 judgment to read, in part:
IT IS ORDERED, ADJUDGED AND DECREED that Philip DeNicola, Jr. be ordered to pay Two Hundred Fifty-Six Dollars ($256.00) per month, and twenty-six percent (26%) of any uncovered extraordinary medicals for the minor children Gabrielle Renee DeNicola and Brianna Sera DeNicola, with payments to be due on the first (1st) day of each month, beginning October 1,1997.
In all other respects the trial court’s judgment is affirmed. Costs of this appeal are taxed to appellee.
AMENDED AND AFFIRMED.

. In the Motion for Appeal, appellant notes her intention to appeal from the judgment dated November 9, 1997.